Deaderick, Ch. J.,
delivered the opinion of the court:
This cause was heard and determined-in the chancery-court of Knox county, and brought to this court by appeal of complainant, Joseph A. Brown.
The original bill sought a partition of a tract of land descended to them from their ancestor, after whose death his five youngest children became the owners of the tract containing 260 acres, subject to the claim of dower in favor of his widow. Upon the petition of Simeon Oornick and wife, If ary, formerly Mary Brown, one of these five children, 41 acres of this tract had been laid off to Mrs. Oornick, and as her one-fifth share in the 260 acres, and also seventy-four and one-half acres had been assigned to the widow, Mary Brown, as dower, by tbe chancery court of Knox county, and this partition and assignment confirmed on the twelfth day of March, 1873. This canse of Simeon Cornick and wife v. Mary Brown et al. is referred *87 to in- this bill, and asked to be made exhibits and parts thereof.
Complainants claim that the remainder of the tract is owned by-Joseph A. and Jane Irick, his sister, and the defendant John \R.; said Joseph owning two-fourths, and Mrs. Irick and John II. each the one-fourth, and that said John K. also owns an undivided one-fifth in remainder in the dower tract.
It is also alleged that said Jane had been a widow for sixteen years, and' that complainants were, and had been,. living together as one family, and defendant, John K, was also an inmate of the family, and had been supported and maintained by Joseph for over fourteen years, or since 1854 to the year 1871, excepting a period of about two and a half years, during which the said John K. had been absent. That said John Iv. was insane, and since 1872 had been in the asylum. Complainant, Joseph A., claims that when the said John K. left his home, he was indebted to- complainant in a greater' amount than the valúe of his interest in the land, and that complainant had been the guardian of John II. since the seventh day of November, 1865, but had made no settlement of his guardianship.
The prayer of t-he bill was for partition, and for air account to ascertain the indebtedness from said John II. to Joseph A., and a lien be declared oil said John K.’s interest in the lánd, and the said interest sold.
The answer of the guardian ad litem neither admitted nor denied these allegations, but demanded strict proof, and asked that the rights and interests of his ward be fully protected.
A decree was pronounced appointing commissioners to make partition of the land as prayed for, and also directing the master to state an account to -show what indebtedness existed in favor of Joseph A. against defendant, John II., as alleged in the bill.
The commissioners made their report; to which no ex *88 ception was taken in tbe court below, and no question i~: made in tbis court in regard to tbis partition.
Tbe master’s report stated that tbe services rendered by said John K. Brown while at home, and tbe rent of bis part of the farm, fully compensated for taking care, clothing, and feeding him, and no indebtedness existed in favor of complainant, Joseph A.
Exceptions were filed to tbis report by complainant, all of which were overruled by tbe chancellor, and the guardian ad litem also excepted upon the ground that the complain ant,••Joseph A., should have been charged with the reasonable portion of the rents due to John K. from the time he was confined in the asylum, in 1872, to the date of taking the account,, and which exception was sustained.
Complainant, Joseph A., then obtained leave to file an amended and supplemental bill,. which was done. The principal allegations in said- amended and supplemental bill were that, in August previous, the said John-TC. had been discharged from the asylum as hopelessly insane, and since his return had been boarded and lodged by complainant, and the prayer of the bill was amended by asking an order for an account of the guardianship by complaim ant of said John K., and for sale of the land. Answer was made by the guardian ad litem, insisting that all matters had been adjudicated, and that under his amended and supplemental bill the complainant had no right except a settlement of his guardianship.
'Chis amended and supplemental bill was dismissed at the January term, 1879, so far as it seeks a sale of the real estate, the chancellor affirming the former decree, but directed an account of the. guardianship. But the chancellor being of opinion that this was a proper ease for granting an appeal before the'coming in of said report, no such account was taken.
The question in this case for this court to determine is, whether this claim of Joseph A. Brown for care, support, and maintenance of his insane brother since 1854, except *89 ing certain intervals during which he was absent, shall be allowed.
The testimony is that defendant has been insane from childhood, and, if T)r. Callender’s statement is to be believed, he is organically so, and incurable.
Although there is some testimony in the record that he was able to work, and did perform labor, yet, on the other hand, it is shown by parties who had the best means of information that his labor was worthless. It certainly accords better with reason and sound judgment to believe that the labor of a man hopelessly insane, oftentimes violent, is uncertain, and not to be depended upon.
A careful examination of the testimony leaves no room for doubt lhat the care, maintenance, and support.of this unfortunate man -far exceeded the rental value of his one-fifth interest in the real estate descended to him from his father.
It is not shown in-the record, nor is it-claimed, that defendant had any other estate or property than this interest in the realty. Granville Fraser, who places the highest estimate on the rental value of this farm, says it was worth $400. Deducting the one-third to which the widow was entitled diiring life, and the one-fifth 'of the remainder amounts to $53.83, and this exclusive of taxes and repairs.
But if this rent or income of his property should be insufficient for his. maintenance and support, has the complainant, Joseph A., the right to trench upon the principal? He claims compensation from the year 1854, extending through a period of twenty-three years prior to the filing of his bill, and as the record shows, -eleven years before the defendant had any regular guardian.
It is manifest that the whole of this claim cannot be allowed. If for no other reason than the lapse -of time, a part of it at least should be treated as a stale demand.
According to the current of authority in this state for a long period of years, the income was the proper fund for the maintenance of an infant or lunatic, and at his peril, *90 even a guardian was not allowed to exceed this without invoking the aid of a court of chancery. This defendant, incapable of contracting, having no person authorized by law to act for him from 3854 to 1865, should not be charged with maintenance and support during this period,
It was insisted on argument for the defendant that complainant, Joseph A., was estopped or precluded from setting up any claim for maintenance and support prior to July, 1868. the date of the filing of his answer in the cause of Cornick and Wife v. Mary Brown and others. It is true Mary Brown states in her' answer that she has supported her insane son, John X. Brown, and that complainant, Joseph A., who was a party to said cause, in his answer states that he is acquainted with the contents of said Mary’s answer, and adopts it as his own, but the said Mary elsewhere states that Joseph assisted her in caring for the helpless members of the family, and she made no charge for same, unless she was charged with rents.
But should complainant be compensated for the maintenance and support of defendant during the period of his guardianship? In view of all the facts and circumstances shown in record, we think he should be.
He was the youngest child. He remained on the farm after his father’s death, and has devoted the best years of his life to the task of supporting the family. Had he refused to remain and to labor on the farm, it may well be inferred that the consequences would have been disastrous to defendant.
While the general doctrine that the discretion to break into the corpus of the estate is intrusted to the court of chancery, yet this was subject to certain qualifications, one of which is that acts done by a guardian or trustee, of his OAvn authority, which clearly appear to the court, on inquiry, to have been beneficial, will be protected. See [Beeler v. Dunn], 3 Head, 90, 91.
In Roseborough v. Roseborough, 3 Bax., 314, 315, in reviewing a case in which the chancellor had held that the *91 guardian had no power to break in on the corpus of the fund, the supreme court says: “We have held in at least two cases that while the guardian had no power to break in on the corpus of the fund, yet, when he was called on to account in a court of chancery, he would be allowed such necessary and proper expenditures, if clearly made out, as a court of chancery would have ordered if applied to in the first instance.”
“The principle of the rule will apply equally in a case where a party comes and asks an approval and confirmation of his action by the court, as in this case.”
It remains to consider whether there was error in the chancellor’s decree sustaining the exception of defendant,' to the master’s report. His report stated “that the services rendered by John K. Brown while at home, and the rent of his part of the farm, fully compensated for taking care of, clothing, and feeding him, and therefore no* indebtedness exists in favor of Joseph A. Brown ... on account of matters set up in the bill;” but the chancellor decreed that Joseph was more than compensated, and to the extent of the value of the rents of defendant’s interest in the land for near a period of five years.
In the view we have taken of this case, the decree of the chancellor will be reversed and the cause remanded to the chancery court, where Joseph A. is directed to make his settlement as guardian of defendant. And in taking said account no compensation will be allowed complainant for support or maintenance prior to the date of his guardianship, nor will he be charged with rents prior to said date. And complainant will be allowed compensation for maintaining and supporting the defendant, and the reasonable expenses connected therewith, since the date of his guardianship.
Any balance found due complainant will be declared a lien on defendant John K.’s interest in the land owned by him, which lien may be enforced by proper orders and decrees of the chancellor. The costs of this cause in this *92 court will be paid by complainant Joseph A., for the one-half of which he shall have credit as guardian of defendant, upon settlement, and the costs of the chancery court will be adjudicated by the chancellor. '